# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| HENRY NICKELL and LAURA NICKELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-2006-STA-dkv |
| | ) | |
| BANK OF AMERICA, N.A. a/k/a BAC HOME | ) | |
| LOANS SERVICING, LP f/k/a | ) | |
| COUNTRYWIDE HOME LOANS | ) | |
| SERVICING, LP; SUNTRUST MORTGAGE, | ) | |
| INC.; and COMMUNITY MORTGAGE CORP., | ) | |
| | ) | |
| Defendants. | ) | |

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT COMMUNITY MORTGAGE CORP.'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART DEFENDANTS BANK OF AMERICA, N.A. AND SUNTRUST MORTGAGE, INC.'S MOTION TO DISMISS

---

Before the Court is Defendant Community Mortgage Corp.'s ("CMC") Motion to Dismiss the Amended Complaint (D.E. # 30), filed on July 6, 2011. Plaintiffs filed a Response (D.E. # 32) on August 4, 2011. Also before the Court is Defendants Bank of America, N.A. ("BOA") and SunTrust Mortgage, Inc.'s ("SunTrust") Motion to Dismiss Counts III and IV **andthe** Rescission Claim of Plaintiffs' Amended Complaint (D.E. # 29), filed on July 5, 2011. Plaintiffs filed a Response to BOA and SunTrust's Motion (D.E. # 31) on August 3, 2011. BOA and SunTrust filed a Reply to Plaintiffs' Response (D.E. # 33) on August 16, 2011. For the reasons set forth below, CMC's Motion is **GRANTED IN PART AND DENIED IN PART** and BOA and SunTrust's Motion is **GRANTED IN PART AND DENIED IN PART.**

1

## BACKGROUND

Plaintiffs filed their Complaint in Shelby County Chancery Court on December 13, 2010. (Notice of Removal, D.E. # 1, at 1.)  BOA and SunTrust removed the case to this Court on January 4, 2011 (D.E. # 1), and CMC joined the Notice of Removal on February 16, 2011.  (D.E. # 13.)  BOA and SunTrust filed a Motion to Dismiss on January 24, 2011 (D.E. # 7), and CMC filed a Motion to Dismiss on February 8, 2011 (D.E. # 11), but the Court granted Plaintiffs' Motion to Amend their Complaint (D.E. # 25) on June 2, 2011.  The Court's June 2, 2011, Order denied Defendants' Motions to Dismiss without prejudice to refile.  (D.E. # 27.)  Plaintiffs filed their Amended Complaint (D.E. # 28) on June 6, 2011.  Defendants then filed the Motions to Dismiss currently pending before the Court.

In their Amended Complaint, Plaintiffs raise four Claims for Relief: fraud in the inducement of the loan transactions against CMC, violation of the Truth in Lending Act ("TILA") and Regulation Z promulgated thereunder against BOA and SunTrust, violation of the Tennessee Consumer Protection Act ("TCPA") against BOA and SunTrust, and breach of contract against BOA and SunTrust.  (Am. Compl. ¶ 68-79.)  The Court will assume the following facts to be true for purposes of these Motions to Dismiss.

On June 28, 1991, Plaintiffs purchased a residence ("the Residence") for $186,000.  (*Id.* ¶ 8.)  By February of 2006, Plaintiffs had taken out a first and second mortgage on the Residence, bringing their combined indebtedness to approximately $280,000.  (*Id.* ¶ 9.)  Because they believed the Residence was worth more than $280,000, and they wanted to make improvements to it, they contacted CMC to investigate the possibility of refinancing their mortgages.  (*Id.* ¶ 9-10.)  CMC's loan officer suggested that they obtain an equity loan of $480,000 and arranged an

2

appraisal from Chris Goodwin ("Goodwin") at the Chris Goodwin Appraisal Company. (*Id.* ¶ 11, 17.) Goodwin estimated the Residence's value to be $600,000, and the proposed equity loan was 80% of this amount. (*Id.* ¶ 12.) CMC's underwriting criteria allegedly provided that it could not make a loan in excess of 80% of the value of a home. (*Id.* ¶ 13.)

CMC's loan officer knew Plaintiffs' excellent credit history and their history of repaying their debt. (*Id.* ¶ 14.) She also knew their income level and assets were sufficient to secure the bank in the event of a default. (*Id.*) The loan officer also allegedly believed that the odds of Plaintiffs being deficient on their loan was remote due to the steady rise in property values at the time of the loan and that the Residence's value would rise to match the home equity loan. (*Id.* ¶ 15.) Thus, because their fees were based on the percentage of the loan, CMC and Goodwin had an incentive to encourage Plaintiffs to take out the largest loan possible. (*Id.* ¶ 16.) On February 28, 2006, Plaintiffs entered into an equity loan ("the Mortgage") with CMC with a principal indebtedness of $480,000. (*Id.* ¶ 18.) They believed that the Residence was worth $600,000 and that their renovations would increase its value. (*Id.* ¶ 19.)

About a year and a half after the execution of the Mortgage, Plaintiffs contacted Goodwin to request a new appraisal in light of the Residence's recent renovations. (*Id.* ¶ 25.) Goodwin's second appraisal valued the Residence at between $325,000 and $350,000, which was approximately $220,000 less than the appraisal value of $600,000 in 2006. (*Id.* ¶ 26.) Thus, the $600,000 appraisal grossly overstated the value of the property. (*Id.* ¶ 23.) Moreover, in July of 2009, Plaintiffs tried to short sell the Residence, and real estate professionals, agents, and attorneys performed a market analysis which ultimately indicated that the Residence has been

grossly overvalued.[1]  (*Id.* ¶ 36.)  Goodwin informed Plaintiffs that the decrease in value was due to the nationwide downturn in real estate values.  (*Id.* ¶ 27.)  Plaintiffs believed and relied on Goodwin's statement because he had "expert insight on appraisals."  (*Id.* ¶ 28.)  However, Goodwin issued his opinion before the financial crisis affected property values in Shelby County, Tennessee.  (*Id.* ¶ 29.)

In February of 2006, Henry Nickell ("Mr. Nickell") was a Manager of Fuels at FedEx Corporation ("FedEx"), and his wife ("Mrs. Nickell") was a Technical Advisor.  (*Id.* ¶ 30.)  Mr. Nickell's salary depended on FedEx's overall performance; thus, in January of 2009, FedEx cut his salary 27%.  (*Id.* ¶ 30.)  Mrs. Nickell's salary was cut by 21%.  (*Id.*)  By September of 2009, FedEx had fired Mr. Nickell.  (*Id.* ¶ 31.)  Since that time, Plaintiffs have spent approximately 62.5% of their income on their monthly mortgage payments, and their income has dropped by 36% since 2008.  (*Id.*)

Accordingly, Plaintiffs began to try to sell the Residence when they realized they could no longer afford to make payments on the Mortgage in the long term.  (*Id.* ¶ 32.) In preparation for the Residence's listing, Plaintiffs spent $15,000 preparing the Residence for sale and paid $1,000 for special advertising.  (*Id.* ¶ 34.)  Plaintiffs listed the Residence at their break-even point on the Mortgage, but they have not received an offer.  (*Id.* ¶ 33.)  When they realized they would not be able to sell the Residence at an amount allowing them to pay off the Mortgage, they turned to SunTrust for approval to sell the Residence at the best market price they could without further recourse from SunTrust.  (*Id.* ¶ 35.)

---

[1]    A "short sale" is a bank-approved sale for less than the outstanding indebtedness on a mortgage.  (*Id.* ¶ 37.)

4

SunTrust's Loss Mitigation Department administers its participation in the Home Affordable Mortgage Program ("HAMP"). (*Id.* ¶ 39.) The Department of the Treasury initiated HAMP on March 4, 2009, to reduce mortgage payments and provide other relief for mortgage borrowers at risk of foreclosure. (*Id.* ¶ 40.) Participating mortgage servicers receive federal incentives for soliciting eligible borrowers for HAMP. (*Id.* ¶ 41.)

Plaintiffs have tried to short sell their home with SunTrust's approval. (*Id.* ¶ 42.) SunTrust's short sale approval process requires applicants to complete a financial disclosure and obtain a conditional contract for sale with a potential buyer before it processes the short sale request. (*Id.* ¶ 43.) Requests for a short sale can take ninety days or more to process. (*Id.*) SunTrust allegedly tries to collect deficiencies on short sales, and the financial disclosure required in its application can facilitate collection of deficiencies. (*Id.*) Additionally, listing residences for sale with the designation "requires lender approval" can reduce the purchase price by approximately 27% due to the slow approval process. (*Id.* ¶ 44.)

Accordingly, Plaintiffs requested approval for the short sale under the Home Affordable Foreclosure Alternatives ("HAFA") program, which provides for short sales and deeds in lieu of foreclosure. (*Id.* ¶ 45.) Participating servicers and investors received financial incentives to allow distressed borrowers access to HAFA's remedies. (*Id.* ¶ 46.) Under HAFA, participating institutions can give prior approval for a short sale, reduce a borrower's mortgage payment to 31% of his or her income while the property is for sale, and provide up to $3,000 in moving expenses for eligible families. (*Id.* ¶ 47.)

SunTrust provided Plaintiffs with contradictory and conflicting information about its participation in HAFA. (*Id.* ¶ 48.) It informed Plaintiffs that it had not implemented its HAFA

guidelines and that it was not processing HAFA requests.  (*Id.* ¶ 49.)  It also told them that it could not process a HAFA short sale request because Plaintiffs' Mortgage was owned by a private investor prohibiting HAFA short sales.  (*Id.* ¶ 55.)  Plaintiffs submitted a hardship letter and several requests for the disclosure of the private entity in possession of their Mortgage.  (*Id.* ¶ 56.)

"At some point," Plaintiffs were led to believe that BOA owned the Mortgage, and they reached out to BOA for an approved short sale under HAFA.  (*Id.* ¶ 51.)  In response, BOA denied that it owned the Mortgage, suggesting that 95% of its mortgages had been transferred to Fannie Mae or Freddie Mac.  (*Id.* ¶ 52.)  Plaintiffs then unsuccessfully searched for the Mortgage through public records on the websites of Fannie Mae and Freddie Mac.  (*Id.* ¶ 53.)  BOA told Plaintiffs that even if it owned the Mortgage, it would be in the servicer's discretion to determine whether to grant a short sale.  (*Id.* ¶ 54.)  In contrast to its statements, BOA does participate in HAFA and allows short sales in some circumstances on mortgages it services.  (*Id.* ¶ 58.)

At some point in time, SunTrust acquired the Mortgage from CMC, and while it services the loan, BOA now owns the Mortgage.  (*Id.* ¶ 20.)  SunTrust supplied capital to CMC through an agreement which also allowed SunTrust to take over some of CMC's loans satisfying certain criteria.  (*Id.* ¶ 21.)  SunTrust did not exercise due diligence in the process of accepting assignment of CMC's mortgage loans.  (*Id.* ¶ 22.)  BOA is the private investor owning Plaintiffs' Mortgage.  (*Id.* ¶ 57.)

Plaintiffs have made timely and full payments to SunTrust throughout this litigation.  (*Id.* ¶ 59.)  Because they delved into their retirement funds and sold possessions, Plaintiffs had no late payments in the four and a half years after they took out the Mortgage.  (*Id.* ¶ 60.)  Mr. Nickell

6

must relocate to pursue his only employment options, and relocation requires him to sell the

Residence.  (*Id.* ¶ 62.)  Mr. Nickell's credit rating plays a vital role in his job search, thereby

increasing the importance of Plaintiffs' timely repayment of the Mortgage.  (*Id.* ¶ 63.)  Plaintiffs

aver that they must short sell their home due to Goodwin's fraudulent appraisal which

substantially overstated the value of the Residence.  (*Id.* ¶ 64.)

     As of April of 2010, the Mortgage had an outstanding balance of $455,192.07.  (*Id.* ¶ 66.)

If they short sell the Residence, Plaintiffs would need to pay a substantial lump sum to SunTrust

at any future closing.  (*Id.* ¶ 67.)

## STANDARD OF REVIEW

     A defendant may move to dismiss a claim for "failure to state a claim upon which relief

can be granted" under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  When

considering a Rule 12(b)(6) motion, the Court must treat all of the well-pled factual allegations

of the complaint as true, construe those allegations in the light most favorable to the non-moving

party, and draw all reasonable inferences in favor of the plaintiff.[2]  However, legal conclusions

"masquerading as factual allegations" or unwarranted factual inferences including "conclusory

allegations" need not be accepted as true.[3]  To avoid dismissal under Rule 12(b)(6), "the

complaint must contain either direct or inferential allegations" with respect to all material

elements of the claim.[4]

---

[2]    *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2007).

[3]    *Id.*

[4]    *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"[5]  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[6]  To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[7]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8]

## ANALYSIS

### CMC's Motion to Dismiss

Sufficiency of Amended Complaint

In its Motion to Dismiss, CMC moved for dismissal of the only Claim for Relief filed in the Amended Complaint addressing its conduct: Count 1, which pleads "Fraud in the Inducement of the Loan Transaction."[9]  Although CMC challenged only the sufficiency of the relief requested by Plaintiffs, Plaintiffs argue that they sufficiently alleged the elements of fraud in the

---

[5]     Fed. R. Civ. P. 8(a)(2).

[6]     *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1953 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

[7]     *Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 570.

[8]     *Iqbal,* 129 S. Ct. at 1949.

[9]     (CMC's Mot. to Dismiss, D.E. # 30-1, at 1.)

inducement.[10]  Accordingly, the Court will address the sufficiency of Plaintiffs' Prayer for Relief before turning to CMC's rescission and laches arguments.

The Court found little Sixth Circuit authority on point regarding the sufficiency of complaints' prayers for relief.  Nevertheless, it appears to be widely accepted that district courts retain discretion to extend relief beyond the bounds of the specific relief requested under the general prayers for relief contained in a complaint.[11]  Courts in the Ninth Circuit have recognized that a specific prayer for relief is not a prerequisite to filing an adequate complaint.[12]  Moreover, while the relief requested by a plaintiff for each respective count may be unclear when he or she

---

[10]     (Pls.' Resp., D.E. # 32-1, at 4.)

[11]     *See, e.g.*, *Walden v. Bodley*, 39 U.S. 156 (1840); *Watts v. Waddle*, 31 U.S. 389 (1832) (holding that although plaintiffs were not entitled to the specific relief they requested, the allegations in the complaint that defendants had been in possession of the land in controversy entitled plaintiffs to recover rents and profits under the prayer for general relief); *Avco Corp. v. Aero Lodge No. 735, Ass'n of Machinists & Aero Space Workers*, 263 F. Supp. 177, 180 (M.D. Tenn. 1966) (applying *Watts* and holding that plaintiffs' allegations of breach of contract and the complaint's facts provided a sufficient basis for an award of damages under the general prayer for relief); *Liquid Carbonic Corp. v. Goodyear Tire & Rubber Co.*, 38 F. Supp. 520, 525 (N.D. Ohio 1940) ("There is nothing in the intricacy of equity pleading that prevents the plaintiff from obtaining the relief under the general prayer, to which he may be entitled upon the facts plainly stated in the bill. . . . If a bill states a cause of action entitling [a] complainant to equitable relief on any theory of the case, a court may grant it under a prayer for general relief, though other specific relief may be mistakenly prayed for.").

[12]     *See Traylor v. Avent, Inc.*, No. CV-08-0918-PHX-FJM, 2008 WL 2945509, at *2 (D. Ariz. July 28, 2008) (citing *Seven Words LLC v. Network Solutions, Inc.*, 260 F.3d 1089 (9th Cir. 2001), for the proposition that while certain circumstances may require plaintiffs to put defendants on notice of the relief they seek, if a request for damages appears in the prayer for relief as against one defendant, the other defendants are on notice of the availability of damages). In *Seven Words*, plaintiffs' complaint requested only declaratory and injunctive relief and, after that relief was mooted, they asserted that their general prayer for relief also provided for monetary damages.  *Seven Words*, 260 F.3d at 1097-98.  The Ninth Circuit disagreed, as plaintiffs raised their claim to damages "at the eleventh hour." *Id.* at 1098.  Here, damages are asserted against BOA and SunTrust in the Prayer for Relief, and the Amended Complaint's caption requests damages and injunctive and declaratory relief.

9

"lumps together" all the relief demanded at the end of the complaint rather than "setting forth an individualized prayer for relief for each count," courts can interpret such complaints to determine which remedies apply to the different defendants named in the complaint.[13]

The Court finds that the Amended Complaint now before it contains a "lumped together" Prayer for Relief similar to that encountered in *In re Dougal*. Plaintiffs have asserted four Claims for Relief, and they have prayed for relief in nine separate paragraphs following the four Counts.[14] CMC is not named in any of the nine Prayers for Relief, but Paragraph 3 of the Prayer for Relief, which requests rescission of the Mortgage, does not specify against which defendant Plaintiffs request rescission. Therefore, the Court interprets Paragraph 3 to seek rescission against all three defendants: CMC, BOA, and SunTrust. Other Prayers for Relief are equally specific: Paragraphs 4-6 request relief against SunTrust and BOA only.[15]

The final Prayers for Relief allege general relief applicable to all defendants, including CMC. Paragraph 7 prays "for such further relief as the Court deems just and proper," Paragraph 8 requests "that . . . Plaintiffs be awarded all costs and expenses, including attorney's fees," and Paragraph 9 prays "for such other and further relief as to which . . . Plaintiffs may be entitled."[16]

---

[13]     *In re Dougal*, 395 B.R. 880, 886 (Bankr. W.D. Pa. 2008) (noting that it was "reasonably clear" that the Dougals sought the remedy of rescission of the mortgage and damages connected to the failure to previously rescind the mortgage).

[14]     (Am. Compl. at 11-13.)

[15]     Paragraph 1 prays for a "temporary injunction permitting . . . Plaintiffs to pay 31% of their monthly income as payment on their mortgage debt during the pendency of this case." (*Id.* at 13.) Because Plaintiffs have not filed a separate and motion regarding this temporary injunction, it is not properly before the Court at this time. *See First Tech. Safety Sys. v. Depinet*, 11 F.3d 641, 649-50 (6th Cir. 1993).

[16]     (*Id.*)

While these general Prayers for Relief do not specifically identify CMC, they are not required to do so.  CMC has not asserted that it is prejudiced by the lack of specificity in the Prayer for Relief, nor does it allege that it has inadequate notice of the liability it could be subjected to if Plaintiffs' fraud in the inducement claim proves successful.  Plaintiffs have specifically prayed for damages against BOA and SunTrust, and that prayer, combined with the fraud in the inducement claim, the paragraphs alleging general relief, and the Amended Complaint's caption, have placed CMC on notice as to the damages for which it would be liable.

Therefore, the Court finds that Plaintiffs have adequately prayed for relief against CMC under Paragraphs 3, 7, and 9 of the Amended Complaint's Prayer for Relief.  Accordingly, to the extent CMC has moved for dismissal of the Amended Complaint because Plaintiffs have not sufficiently prayed for relief against it, the Court finds the Amended Complaint to be sufficient, and CMC's Motion in this regard is **DENIED**.

<u>Availability of Rescission</u>

An individual induced by fraud to enter a contract may elect one of two remedies: treating the contract as void and suing for the equitable remedy of rescission or treating the contract as existing and suing for damages under the theory of deceit.[17]  Here, Plaintiffs have elected the first remedy: rescission.  Rescission "involves the avoidance or setting aside of a transaction.  It is an equitable remedy, available where the contract was induced by fraud or duress. . . . It is intended to return the parties to the positions they were in before the transaction took place."[18]  When a buyer is the victim of fraud, he or she "is allowed to recover the consideration or purchase price

---

[17]     *Vance v. Schulder*, 547 S.W.2d 927, 931 (Tenn. 1977).

[18]     *Williams v. Upchurch*, 768 S.W.2d 265, 271 (Tenn. Ct. App. 1988).

11

he [or she] paid for the property."[19]  But the rescinding party must "return or offer to return that which he has received under [the contract]," thus returning "the other party as nearly as is possible to his status before the contract."[20]

However, "if title to a negotiable contract or to goods be secured by fraud, [and] a purchaser from the fraudulent person acquires this title, and if he or she had no notice of the fraud and was not a volunteer, no equity exists against him or her.  As commonly expressed, a bona fide purchaser for value of the voidable title of the fraudulent person acquires an indefeasible title."[21]

In Paragraph 3 of their Prayer for Relief, Plaintiffs generally request rescission of the Mortgage, rendering their request applicable to all defendants.[22]  In their Amended Complaint, Plaintiffs aver that CMC's agent, Goodwin, led them to believe that the Residence was worth substantially more than its actual value so that they would "consummate a loan transaction by which they would owe more than the" value of the Residence.[23]  The appraisal was arranged and procured for the purpose of substantially overstating the property's value.[24]  Plaintiffs state that they relied on the false appraisal to their detriment and suffered substantial financial damage.[25]

---

[19]     *Isaacs v. Bokor*, 566 S.W.2d 532, 538 (Tenn. 1978).

[20]     *Lloyd v. Turner*, 602 S.W.2d 503, 510 (Tenn. Ct. App. 1980).

[21]     27 Williston on Contracts § 69:52 (4th ed. 2011).

[22]     (Am. Compl. at 13.)

[23]     (*Id.* ¶ 69.)

[24]     (*Id.* ¶ 70.)

[25]     (*Id.* ¶ 71.)

In its Motion, CMC argues that the equitable remedy of rescission is not available against it for three reasons.[26]  First, CMC asserts that Plaintiffs would need to return to CMC the money they received in return for the home equity loan if they seek to have the Mortgage rescinded.[27]  Second, CMC avers that BOA is the proper party against whom to seek rescission as it owns the Mortgage.[28]  Finally, it submits that rescission would be barred by laches.[29]  Notably, CMC does not challenge the sufficiency of Plaintiffs' fraud in the inducement claim under Rule 12(b)(6).

In response, Plaintiffs assert that they prayed for rescission of the Mortgage against all Defendants, and that this Court has discretion to award either equitable or monetary damages where there is fraud in the inducement of a contract.[30]  Regarding CMC's first argument, Plaintiffs state that they "are prepared to do whatever is necessary to return to the status quo"—which presumably includes repaying the amount of equity they received from CMC.[31]

Plaintiffs respond to Defendant's second argument by stating that SunTrust and BOA are not necessarily bona fide purchasers for value, as they must establish that they had no notice of CMC's alleged fraud.[32]  Finally, Plaintiffs submit that laches is an inappropriate defense to raise

---

[26]     (CMC's Mot. to Dismiss, D.E. # 30-1, at 4.)

[27]     (*Id.*)

[28]     (*Id.*)

[29]     (*Id.* at 5.)

[30]     (Pls.' Resp., D.E. # 32-1, at 5.)

[31]     (*Id.*)

[32]     (*Id.* at 6.)  While Plaintiffs aver the Amended Complaint states that SunTrust and BOA both failed to perform due diligence, Paragraph 22 of the Amended Complaint merely states the following: "SunTrust did not exercise due diligence in the process of accepting assignment of mortgage loans with [CMC]."  (*Id.*)  Such a statement is conclusory and

13

at the motion to dismiss stage and that, in any event, they did not inexcusably delay their suit against CMC.[33]

The Court finds that the remedy of rescission is unavailable as against CMC. Although CMC and Plaintiffs initially entered into the Mortgage, CMC sold all of its interest in the Mortgage to SunTrust, which then sold its interest in the Mortgage to BOA. Thus, BOA now owns the Mortgage and is the other party to the contract with Plaintiffs. Because CMC does not own the Mortgage and is no longer a party to it, rescission does not lie against it. Therefore, CMC's Motion to Dismiss rescission as a remedy against it is **GRANTED**. Thus, the Court need not reach CMC's arguments regarding the applicability of laches. However, because Plaintiffs could recover relief against CMC under the general relief alleged in Paragraphs 7 and 9 of the Prayer for Relief, CMC remains a party to this action.

### BOA and SunTrust's Motion to Dismiss

### TCPA

Plaintiffs allege that BOA and SunTrust failed "to provide [them] with information about the ownership of [the Mortgage] as required by federal law" and that they provided "false, inconsistent, and contradictory information about the ownership of [the Mortgage] and their eligibility for consideration through . . . HAFA."[34]  Plaintiffs further aver that these actions "constitute unfair or deceptive acts or practices" and were "willful and knowing."[35]

---

unsupported at best, and the Court will disregard it under *Twombly* and *Iqbal*.

[33]     (*Id.*)

[34]     (Am. Compl. ¶ 75.)

[35]     (*Id.* ¶ 76-77.)

The TCPA provides that "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices."[36]  The TCPA contains a list of different "unfair or deceptive acts or practices" which violate the TCPA;[37] although Plaintiffs do not mention under which section of the TCPA they are bringing suit, the Amended Complaint mentions that "Defendants' acts, policies, and practices constitute unfair or deceptive acts or practices affecting the conduct of trade or commerce."[38]  Therefore, the Court interprets Plaintiffs' Amended Complaint as bringing suit under section 47-18-104(b)(27) of the TCPA.

Section 47-18-104(b)(27) prohibits "[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person."[39]  To recover under the TCPA, a plaintiff "must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value

---

[36]     Tenn. Code Ann. § 47-18-104(a).

[37]     *Id.* § 47-18-104(b).

[38]     (Am. Compl. ¶ 75.)

[39]     Tenn. Code Ann. § 47-18-104(b)(27).  The Court notes that this section was amended in October of 2011 to read "[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person; provided, however, that enforcement of this subdivision (b)(27) is vested exclusively in the office of the Attorney General and Reporter and the director of the division."  2011 Pub. Acts, Ch. 510, § 15.  However, this amendment took effect on October 1, 2011, and the Public Act did not indicate that it should be applied retroactively.  *Id.* § 24 ("This act shall take effect October 1, 2011, the public welfare requiring it and shall apply to all liability actions for injuries, deaths[,] and losses covered by this act which accrue on or after such date.").  Therefore, the Court finds the controlling version of the TCPA to be the version in effect when Plaintiffs filed suit in 2010.

wherever situated . . . .'"[40] Thus, although the TCPA does not require reliance, plaintiffs are required to show that the defendant's wrongful conduct proximately caused their injury.[41]

The defendant's conduct need not be willful or knowing, but if it is, the TCPA permits the trial court to award treble damages.[42]  However, the TCPA specifically exempts from its coverage "[a]cts or transactions required or specifically authorized under the laws administered by, or rules and regulations promulgated by, any regulatory bodies or officers acting under the authority of this state or of the United States."[43]

In their Motion, BOA and SunTrust present two arguments regarding the TCPA's inapplicability.  First, they assert that acts governed by federal regulatory bodies are exempt from coverage under the TCPA.[44]  Citing courts from several jurisdictions, they argue that because Plaintiffs admit that TILA governs their conduct with respect to the Mortgage, Tenn. Code Ann. § 47-18-111 exempts BOA and SunTrust's alleged failure to provide information about the ownership of the Mortgage and Plaintiffs' eligibility under HAFA from the TCPA's coverage.[45] BOA and SunTrust further contend that the Office of the Comptroller of the Currency's ("OCC") regulation of their conduct and operations also triggers the TCPA's exemption provision.[46]

---

[40]     *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (quoting Tenn. Code Ann. § 47-18-109(a)(1)).

[41]     *White v. Early*, 211 S.W.3d 723, 741 (Tenn. Ct. App. 2006).

[42]     Tenn. Code Ann. § 47-18-109(a)(3).

[43]     *Id.* § 47-18-111(a)(1).

[44]     (BOA and SunTrust's Mot. to Dismiss, D.E. # 29-1, at 5.)

[45]     (*Id.*)

[46]     (*Id.* at 7.)

Second, they argue that Plaintiffs have not suffered an ascertainable loss of money or property as a result of their alleged conduct.[47]

In response, Plaintiffs first argue that Tennessee courts have already decided that plaintiffs may maintain a cause of action under the TCPA despite regulation of the defendant's actions by a state or federal body.[48]  They cite *Skinner v. Steele*, 730 S.W.2d 335 (Tenn. Ct. App. 1987), and contend that the exemption provision does not apply to unfair or deceptive actions taken when the defendant otherwise complies with the facial requirements of a federal or state regulation.[49]  Second, Plaintiffs aver that they suffered an ascertainable loss from the actions of BOA and SunTrust—namely that they were deceived into executing a mortgage for $155,000 more than the Residence's market value and agreeing to pay $144,549.00 more in interest from the fraudulent appraisal.[50]  They attempt to connect BOA and SunTrust's deception regarding the true owner of the Mortgage and the availability of loss mitigation options to this increased interest payment, arguing that this deception "prolong[ed] and worsen[ed] the injury."[51]

In reply, BOA and SunTrust first point out that *Skinner* noted that the TCPA's exemption should not apply when it would deprive consumers of a meaningful remedy.[52]  They argue that Plaintiffs have a meaningful remedy available to them, as they have alleged a TILA violation for

---

[47]     (*Id.* at 9-11.)

[48]     (Pls.' Resp., D.E. # 31-1, at 5.)

[49]     (*Id.* at 5-6.)

[50]     (*Id.* at 7.)

[51]     (*Id.* at 8.)

[52]     (BOA and SunTrust's Reply, D.E. # 33, at 3.)

the same conduct underlying the alleged TCPA violation.[53]   Second, they assert that Plaintiffs

have conceded that their "primary injury stems from the fraudulent 2006 appraisal" without

alleging that BOA or SunTrust played a role in that appraisal.[54]   Furthermore, they aver that they

were not obligated to grant Plaintiffs a short sale under HAMP or HAFA and that Plaintiffs could

not have suffered a loss without such an obligation.[55]   BOA and SunTrust also raise a causation

argument, arguing that Plaintiffs "have not pointed to a single fraudulent or deceptive act . . . that

has caused [Plaintiffs] an ascertainable loss."[56]

     The Court finds that a more expedient examination of Plaintiffs' TCPA claim begins with

determining whether Plaintiffs have suffered an ascertainable loss caused by BOA and

SunTrust's conduct before proceeding to whether the TCPA's exemption applies.   The Court

finds that the Amended Complaint has failed to show that Plaintiffs suffered an ascertainable loss

caused by BOA and SunTrust.   Plaintiffs identify the crux of their injury as arising from their

execution of "a mortgage for $155,000 more than the Residence's market value and agreeing to

pay $144,549.00 more in interest from the fraudulent appraisal."   But the Amended Complaint

does not allege that BOA and SunTrust played a role in that fraudulent appraisal; indeed, the

Amended Complaint contains no reference to either BOA or SunTrust's knowledge of the

allegedly fraudulent appraisal.

---

[53]    (*Id.*)

[54]    (*Id.*)

[55]    (*Id.* at 4.)

[56]    (*Id.* at 5.)

The Amended Complaint does not contain information suggesting that BOA and SunTrust played a role in the fraudulent appraisal or caused any loss arising directly therefrom. Therefore, the only "ascertainable loss" conceivably caused by BOA and SunTrust which Plaintiffs have suffered arises from their alleged deception regarding the owner of the Mortgage and other mitigation options under HAMP and HAFA. But the difficulty in determining the owner of the Mortgage, however frustrating, did not cause a loss of "money or property, real, personal, or mixed, or any other article, commodity, or thing of value." Thus, the Court finds that Plaintiffs have not suffered an ascertainable loss caused by BOA and SunTrust's alleged deception regarding the true owner of the Mortgage.

Similarly, the remaining loss alleged by Plaintiffs—having to pay a higher mortgage payment because BOA and SunTrust have delayed determining whether Plaintiffs qualify for relief under HAMP and HAFA—does not qualify as an "ascertainable loss" under the TCPA. BOA and SunTrust are not required to provide relief under those programs; thus, any delay in their determination did not worsen Plaintiffs' injury arising from the fraudulently induced Mortgage. In any case, Plaintiffs would be required to make payments on the Mortgage unless and until BOA and SunTrust awarded them relief under HAMP or HAFA; thus, their continued payment of the Mortgage cannot result in an "ascertainable loss" caused by BOA or SunTrust under the TCPA.

Therefore, the Court finds that the Amended Complaint does not demonstrate that Plaintiffs have suffered an ascertainable loss caused by BOA and SunTrust's conduct. Accordingly, their conduct does not fall under the TCPA's statutory scheme, and the Court need

not address whether the TCPA's exemption applies to their conduct.  Thus, BOA and SunTrust's

Motion to Dismiss Plaintiffs' TCPA claim is **GRANTED**.

Breach of Contract

The essential elements of a breach of contract claim include: "(1) the existence of an

enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages

caused by the breach of the contract."[57]  Plaintiffs' scant breach of contract claim consists of two

paragraphs.  First, they incorporate all other claims by reference.[58]  Second, they allege that BOA

and SunTrust "have breached contractual agreements with the United States Department of the

Treasury regarding the administration of [HAMP] and HAFA . . . , which . . . were clearly for the

benefit of consumers like [P]laintiffs."[59]

In their Motion, BOA and SunTrust present two reasons why the Court should dismiss

Plaintiffs' breach of contract claim.  First, they argue that it consists of "nothing more than

conclusory allegations," thereby failing to satisfy the requirements of *Twombly* and *Iqbal*.[60]  They

point out that Plaintiffs failed to identify the specific agreements breached and that

nonperformance amounting to a breach cannot be adequately alleged without identifying the

allegedly breached agreement.[61]  Second, even if Plaintiffs sufficiently pleaded breach of

---

[57]     *ARC Lifemed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

[58]     (Am. Compl. ¶ 78.)

[59]     (*Id.* ¶ 79.)

[60]     (BOA and SunTrust's Mot. to Dismiss, D.E. # 29-1, at 11.)

[61]     (*Id.* at 12.)

contract, BOA and SunTrust assert that Plaintiffs were not intended third party beneficiaries

under the alleged contract between the Treasury Department and BOA and SunTrust ("the

Agreement").[62]  Moreover, they cannot allege a claim for a breach of HAMP or HAFA, as neither

program contains a private right of action.[63]

   In response, Plaintiffs fail to address BOA and SunTrust's argument that their breach of

contract claim is conclusory.  Instead, Plaintiffs devote substantial time to their argument that

they are intended beneficiaries to the Agreement.[64]  Plaintiffs admit that they have not obtained a

copy of the Agreement, but they quote the recital of a template version of the contract.[65]  They

assert that the Agreement was executed under the Emergency Economic Stabilization Act of

2008, which had the goal of stabilizing the "the failing banking and real-estate markets by

allowing [the] [f]ederal government to purchase non-government-based mortgage loans from

banks."[66]  Thus, the Agreement "intentionally benefitted borrowers, like [Plaintiffs], by requiring

the bank to initiate the consideration process for HAMP."[67]  However, Plaintiffs then assert that

BOA and SunTrust "breached [the Agreement] . . . by not providing initial consideration for

---

[62]   (*Id.* at 13-14.)

[63]   (*Id.* at 15-16.)

[64]   (Pls.' Resp., D.E. # 31-1, at 9.)

[65]   (*Id.* at 10.)  However, Plaintiffs have not provided even this template to the Court.
Regardless, because the template was not attached to the Amended Complaint, the Agreement is
not properly before the Court, and any consideration of it or its contents at this stage would be
inappropriate.

[66]   (*Id.* at 9.)

[67]   (*Id.* at 10.)

HAFA to [them] by purposefully providing inaccurate and confusing information, [thereby] preventing them from getting the consideration promised under" the Agreement.[68]

In reply, BOA and SunTrust point out that "Plaintiffs do not identify [or provide] a single contractual provision which [they] have breached" or the actual Agreement which was allegedly breached.[69]  They also quote *Iqbal* and note that "[a] plaintiff with no facts and 'armed with nothing more than conclusions' cannot 'unlock the doors of discovery.'"[70]  They assert that such scant information, without even identifying the breached contractual provision, cannot state a successful claim.[71]  Even if Plaintiffs had stated a breach of contract claim, BOA and SunTrust argue that Plaintiffs have not demonstrated that they are intended beneficiaries of the Agreement.[72]  BOA and SunTrust provide the Court with a list of cases from district courts in Massachusetts, Arizona, and California holding that "borrowers are not [intended] third-party beneficiaries of . . . HAMP."[73]  They argue that Plaintiffs wholly failed to address that volume of case law.[74]

The Court finds that Plaintiffs' Amended Complaint has failed to satisfy even the first element of breach of contract.  Plaintiffs do not identify or present the Court with the contract

---

[68]     (*Id.*)

[69]     (BOA and SunTrust's Reply, D.E. # 33, at 5.)

[70]     (*Id.* at 6.)

[71]     (*Id.*)

[72]     (*Id.* at 7.)

[73]     (*Id.*)

[74]     (*Id.*)

which BOA and SunTrust allegedly breached.  While Plaintiffs argue that they do not have a copy of the contract and that it should become available during discovery, they point to a form recital in their Response as giving them a cause of action under the contract.  But even if this form recital sufficiently supported "the existence of an enforceable contract," it is not properly before the Court because it did not form part of the Amended Complaint.  Moreover, Plaintiffs' assertion of the potential availability of additional information during discovery indicates that their breach of contract claim is just the sort of fishing expedition which the Supreme Court meant to prevent by articulating the plausibility standard in *Twombly* and *Iqbal*.

Therefore, the Court finds that Plaintiffs have failed to state a claim for breach of contract.  They have not sufficiently pled the existence of a contract between the Treasury Department and BOA and SunTrust: accordingly, they fail to satisfy the first element of a breach of contract claim.  Moreover, Plaintiffs necessarily fail to satisfy the second element of breach of contract—nonperformance amounting to a breach of contract—because they have not adequately shown that a contract exists.  Because the Court finds that Plaintiffs have not adequately pled their breach of contract claim, it need not address the parties' arguments regarding Plaintiffs' status as incidental or intended third party beneficiaries to the Agreement.  Thus, BOA and SunTrust's Motion to Dismiss as to Plaintiffs' breach of contract claim is **GRANTED**.

<u>Rescission</u>

As the Court addressed Tennessee's law regarding rescission in its Order on CMC's Motion to Dismiss above, it need not repeat the same language here.  In Paragraph 3 of the Amended Complaint's Prayer for Relief, Plaintiffs have prayed for rescission of the Mortgage against all three defendants in this action.  BOA and SunTrust assert that rescission is not an

available remedy under the TCPA, TILA, breach of contract, or fraudulent inducement.[75]

However, the Court has dismissed Plaintiffs' TCPA and breach of contract claims against BOA

and SunTrust.  BOA and SunTrust have not challenged Plaintiffs' TILA claim.  Therefore, the

only remaining claims against them for which rescission could lie as a remedy are the fraud in the

inducement and TILA claims.

**TILA**

The section of TILA addressing the liability of assignees provides in pertinent part that

"[i]n addition to other disclosures required by this subchapter, not later than 30 days after the

date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the

creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such

transfer . . . ."[76]  Thus, § 1641(g) provides the statutory parallel to 12 C.F.R. § 226.39 mentioned

in the Amended Complaint.[77]  Additionally, § 1641 limits assignees' damages and provides that

---

[75]     (BOA and SunTrust's Mot. to Dismiss, D.E. # 29-1, at 17.)

[76]     15 U.S.C. § 1641(g)(1).

[77]     *See id.* 12 C.F.R. § 226.39 governs mortgage transfer disclosures when an "owner
of an existing mortgage loan [acquires] legal title to the debt obligation, whether through a
purchase, assignment or other transfer."  12 C.F.R. § 226.39(a)(1).  Under this regulation,
"covered person[s]" are required to disclose "on or before the thirtieth calendar day following the
date of transfer" the following:

> the name, address, and telephone number of the covered person . . . , the date of
> transfer . . . , the name, address, and telephone number of an agent or party
> authorized to receive notice of the right to rescind and resolve issues concerning
> the consumer's payments on the loan, . . . [and] where transfer of ownership of the
> debt to the covered person is or may be recorded in public records or,
> alternatively, that the transfer of ownership has not been recorded in public
> records at the time the disclosure is provided.

*Id.* § 226.39(b); 226.39(d)(1)-(4).

24

they "may not exceed with respect to actions based upon a violation of [§ 1641], the amount specified in [§] 1640 of this title; and with respect to all other causes of action, the sum of the amount of remaining indebtedness . . . and the total amount paid by the consumer in connection with the transaction."[78]  Damages under § 1640 for "fail[ing] to comply with any requirement imposed under this part, including any requirement under [§] 1635 of this title [or] subsection (f) or (g) of [§] 1641 of this title" include liability "in an amount equal to the sum of any actual damage sustained by [any creditor] as a result of the failure [and] twice the amount of any finance charge in connection with the transaction."[79]

Notably, TILA provides for a right to rescission "as to certain transactions."[80]  Section 1635 addresses the situations in which obligors may rescind agreements under TILA.  First, obligors "shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later."[81]  Other than this three-day rescission window, obligors have three years from the date of consummation to rescind the transaction if the creditor fails to provide the required notice of the right to rescind or TILA's material

---

[78]     15 U.S.C. § 1641(d)(1)-(2).

[79]     *Id.* § 1640(a)(1)-(2).

[80]     *See id.* § 1635.

[81]     *Id.* § 1635(a).

disclosures.[82]  Section 1635(f) "completely extinguishes the right of rescission at the end of the three-year period."[83]

BOA and SunTrust argue that rescission is not a statutorily prescribed remedy under TILA.[84]  They equate Regulation Z, under which Plaintiffs have sued, to its statutory counterpart codified at 15 U.S.C. § 1641(g) and assert that "[v]iolations of 12 C.F.R. § 226.39 and 15 U.S.C. § 1641(g) do not give rise to the remedy of rescission."[85]  BOA and SunTrust argue that TILA's rescission provision does not apply beyond midnight of the third business day after the signing of the transaction at issue, and Plaintiffs have sued far beyond that three-day window.[86]  Finally, they argue that the only other rescission possibility arises if a creditor failed to provide notice of the right to rescind or failed to provide TILA's material disclosures.[87]  As Plaintiffs have not argued that either BOA or SunTrust failed to perform these actions and their alleged failure to notify Plaintiffs of the change in ownership of the Mortgage does not fit within TILA's enumerated material disclosures, BOA and SunTrust assert that Plaintiffs "may not rely on TILA for the remedy of rescission."[88]  Plaintiffs do not address this argument in their Response, and in

---

[82]     *See id.* § 1635(f); 12 C.F.R. § 226.23(a)(3).  "Material disclosures" are "the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosures and limitations referred to in §§ 226.32(c) and (d) and 226.35(b)(2)."  12 C.F.R. § 226.23(a)(3) n.48.

[83]     *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).

[84]     (*Id.*)

[85]     (*Id.* at 18.)

[86]     (*Id.* at 18.)

[87]     (*Id.* at 18-19.)

[88]     (*Id.* at 19.)

their Reply, BOA and SunTrust revisit their previous arguments regarding the unavailability of rescission as a remedy under TILA.[89]

The Court finds that rescission is unavailable to Plaintiffs as a remedy for any TILA violation committed by BOA and SunTrust.  Because Plaintiffs commenced this action on December 13, 2010, they sued after the three-day period providing for rescission of the Mortgage at their option.  Additionally, Plaintiffs do not allege that BOA and SunTrust failed to provide material disclosures or notice of their right to rescind as required by 15 U.S.C. § 1635(f) and 12 C.F.R § 226.23(a).  Therefore, the Amended Complaint does not show that rescission would be available to Plaintiffs under TILA.  Thus, BOA and SunTrust's Motion to Dismiss the remedy of rescission under TILA is **GRANTED**.

**Fraud in the Inducement**

The sole remaining means for Plaintiffs to have rescission as a remedy in this case depends upon whether BOA and SunTrust were bona fide purchasers for value of the Mortgage. Again, the Court need not repeat the law regarding rescission and bona fide purchasers for value previously articulated in this Order.

In their Motion, BOA and SunTrust argue that they are bona fide purchasers for value of the Mortgage and that rescission cannot lie against them.[90]  They also note that "Plaintiffs d[id] not allege that [they] participated in or were aware of any fraudulent activity surrounding the origination of the [Mortgage] or execution of the [Mortgage] documents."[91]  Therefore, BOA and

---

[89]     (BOA and SunTrust's Reply, D.E. # 33, at 7-8.)

[90]     (BOA and SunTrust's Mot. to Dismiss, D.E. # 29-1, at 19.)

[91]     (*Id.* at 19-20.)

SunTrust assert that rescission cannot be enforced against them even if CMC is liable for Plaintiff's claim of fraud in the inducement.[92]

In response, Plaintiffs assert that they did not learn of CMC's deceptive actions until July of 2009.[93]  Plaintiffs appear to anticipate a laches argument, as they argue that they sued within the applicable statute of limitations and that their rescission claim is timely.[94]  Plaintiffs then turn to the affirmative defense of being a bona fide purchaser for value raised by BOA and SunTrust. Plaintiffs argue that "this affirmative defense requires the trier of fact to determine whether Defendants purchased the [Mortgage] without notice of [CMC's alleged fraudulent inducement] and whether Defendants in good faith paid valuable consideration for the [Mortgage] without notice of prior adverse claims."[95]  Plaintiffs' Response concludes with the conclusory statement that "[BOA and SunTrust] were on notice of the adverse claims that [Plaintiffs] could have against [CMC]."[96]

In reply, BOA and SunTrust point out that the Amended Complaint does not allege that they "participated in or were aware of any fraudulent activity surrounding the origination of the [Mortgage] or the execution of the [Mortgage] documents."[97]  They argue that Plaintiffs' conclusory argument to the contrary in their Response "is not sufficient to save Plaintiffs' claim

---

[92]     (*Id.* at 20.)

[93]     (Pls.' Resp., D.E. # 31-1, at 11.)

[94]     (*Id.* at 11-12.)

[95]     (*Id.* at 12.)

[96]     (*Id.*)

[97]     (BOA and SunTrust's Reply, D.E. # 33, at 8.)

for rescission."[98]  Furthermore, BOA and SunTrust state that the Amended Complaint only explains that the Mortgage was transferred from CMC to SunTrust and then to BOA.[99] Accordingly, BOA and SunTrust state that the only allegations regarding fraud in the Amended Complaint relate to CMC's conduct and that they have not stated a claim for rescission against either BOA or SunTrust.[100]

The Court finds that any decision on whether BOA and SunTrust are bona fide purchasers for value of the Mortgage would be premature at this time.  While Plaintiffs' Complaint did not contain any allegations that BOA or SunTrust knew about the allegedly fraudulent appraisal beyond the assertion that "SunTrust did not exercise due diligence in the process of accepting assignment of mortgage loans from [CMC]," which is a legal conclusion and thus must be disregarded under *Twombly* and *Iqbal*, BOA and SunTrust do not provide affirmative evidence from which the Court can definitively conclude that they are indeed bona fide purchasers for value.  Therefore, the Court finds that BOA and SunTrust's statuses as bona fide purchasers for value must be determined at a later time.  Accordingly, their Motion to Dismiss rescission as a remedy against them for any fraud in the inducement performed by CMC is **DENIED**.

### Availability of Laches

The essential elements of laches are as follows: "(1) an inexcusably long delay caused by [the] claimant's negligence in asserting its claim and (2) injury to another's rights resulting from

---

[98]     (*Id.* at 9.)

[99]     (*Id.*)

[100]     (*Id.*)

this delay."[101]  Whether a laches defense is successful depends upon the facts and circumstances of each case.[102]  A defendant can make out a laches defense "if [the] claimant's actions amount to actual or constructive acquiescence in the defendant's conduct."[103]  In cases applying laches, Tennessee's courts "frequently cite the death of witnesses or the loss of evidence as the sort of prejudice that, coupled with an unreasonable delay, amount[s] to laches."[104]

The Court finds that laches is unavailable to BOA and SunTrust as a defense to any valid rescission claim ultimately proven by Plaintiffs.  Under the facts of this case, while there has been some delay in Plaintiffs' assertion of the alleged fraud in the inducement and their accompanying right to rescission, BOA and SunTrust have not pointed to any prejudice they have suffered as a result of the delay.  The sort of prejudice usually identified by Tennessee courts, such as loss of evidence of the death of witnesses, is absent from this case.  The only harm suffered by BOA and SunTrust which the Court can identify is that BOA and SunTrust purchased an allegedly fraudulently induced mortgage which may be subject to rescission.  However, BOA and SunTrust assert that they were bona fide purchasers for value and that they had no notice of this fraudulent inducement; therefore, if their assertions ultimately turn out to be true, rescission of the Mortgage will not lie against them and they will suffer no prejudice as a result of Plaintiffs' delay.  BOA and SunTrust cannot have their cake and eat it too.  Therefore,

---

[101]    *State* ex rel. *Elvis Presley v. Crowell*, 733 S.W.2d 89, 101 (Tenn. Ct. App. 1987).

[102]    *Hannewald v. Fairfield Cmtys., Inc.*, 651 S.W.2d 222, 228 (Tenn. Ct. App. 1983).

[103]    *Clark v. Am. Nat'l Bank & Trust Co. of Chattanooga*, 531 S.W.2d 563, 573 (Tenn. Ct. App. 1974).

[104]    *Brown v. Ogle*, 46 S.W.3d 721, 726-27 (Tenn. Ct. App. 2000).

under the facts of this case, BOA and SunTrust's assertion of the affirmative defense of laches is

**DENIED**.

## CONCLUSION

For the reasons set forth above, CMC's Motion to Dismiss is **GRANTED IN PART**

**AND DENIED IN PART**, and BOA and SunTrust's Motion to Dismiss is **GRANTED IN**

**PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: February 6, 2012.

31